**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:24-bk-03076-LVV** |
| | **CHAPTER 11** |
| **PAYKICKSTART, LLC** | |
| | ***Subchapter V Election*** |
|     **Debtor.** | |
| _____/ | |
| | |
| **In re:** | **CASE NO.: 6:24-bk-03075-LVV** |
| | **CHAPTER 11** |
| **ABIDE BRANDS, INC.** | |
| | ***Subchapter V Election*** |
|     **Debtor.** | ***Joint Administration Pending*** |
| _____/ | |

**DEBTORS' MOTION FOR (I) AN ORDER APPROVING BIDDING AND NOTICE PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS; AND (II) AN ORDER (A) AUTHORIZING THE SALE OF ASSETS; AND (B) SCHEDULING AUCTION AND FINAL APPROVAL OF SALE; AND (C) GRANTING CERTAIN RELATED RELIEF**

    **ABIDE BRANDS, INC.** ("Abide") **and PAYKICKSTART, LLC** ("Paykickstart") (collectively the "Debtors" – where appropriate), by and through their undersigned counsel, and pursuant to §§ 105, 363 and 365 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure, moves  this Court (the "Motion" or "Procedures Motion") for an order: (i) approving bidding and notice procedures for the sale of substantially all of their respective assets, namely the Debtors' interests in their intellectual property, goodwill, customer lists, contracts and corporate ownership interests, free and clear of the liens, claims and encumbrances (the "Assets"); and (ii) an Order (a) authorizing the sale of the Assets, free and clear of liens, claims and encumbrances in connection therewith; (b) scheduling an auction and final approval of sale,

and (c) granting such other and further relief as this Court deems necessary. In support of the Motion, Debtor states as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this Procedures Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

3.      No previous motion for the relief sought herein has been made to this Court.

**Factual Background**

4.      On June 19, 2024 (the "Petition Date"), Debtors filed their respective petitions for reorganization under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their respective businesses and manage their assets as debtors-in-possession in accordance with their duties and responsibilities under the Bankruptcy Code. Additional information regarding the Debtors' businesses can be accessed at www.paykickstart.com and the Joint Case Management Summaries filed in the Chapter 11 cases of each debtor (Doc. No. 4 – Abide Brands; and Doc. No. 5 – Paykickstart).

5.      As set forth in the Joint Chapter 11 Case Management Summaries, Abide is a Delaware corporation formed on May 10, 2022 which operates as an acquisition, management and holding company for software development companies. Abide currently owns all outstanding interests in Paykickstart which it manages.

6.      Paykickstart is a software development company which provides e-commerce payment solutions for a wide variety of clientele. In 2024, Abide and Paykickstart explored opportunities to sell their respective interests and assets to satisfy their secured and unsecured loan obligations. Sale negotiations were complicated in May and June 2024 when Debtors started to receive creditor and investor demand notices. Rather than engage in prolonged litigation with creditors, Debtors elected to utilize the Chapter 11 process to facilitate a sale of their respective assets and interests.

**The Pre-Petition Loans and Unsecured Obligations**

7.      Boopos Warehouse, LLC ("Boopos") asserts a first priority security interest in substantially all the assets of Paykickstart on account of a $1.79 million obligation (the "Boopos Debt"). Boopos may also assert an interest in Abide's membership interests in Paykickstart in association with a Pledge Agreement by and between Boopos and Abide.

8.      Prior to the Petition Date, Abide carried unsecured debt obligations totaling approximately $3,369,776.11, which amount is subject to change based on potential claim disputes. Paykickstart does not currently carry any unsecured obligations.

**Proposed Sale**

9.      Debtors have determined that it is in the best interests of their respective creditors to sell the Assets, subject to higher and/or better offers, by way of an auction (the "Auction").

10.     Shortly after the commencement of their respective bankruptcy cases, Debtors executed a Letter of Intent which will serve as the precursor to an Asset Purchase Agreement (the "Purchase Agreement") with PayKickstart, LLC (a non-debtor Florida limited liability company formed by Cole Schrimsher who is an unsecured creditor of Abide) (the "Stalking Horse"). The Stalking Horse has agreed to purchase the assets of Abide and Paykickstart for

$4,500,000.00. A copy of the Letter of Intent is attached hereto as **Exhibit "C"**. An executed copy of an Asset Purchase Agreement will be made available prior to the Bid Procedures Hearing (defined below).

11.     To ensure the Purchase Agreement with the Stalking Horse represents the highest or otherwise best value to be derived from the Assets, Debtor has determined that it is in the best interests of all creditors to solicit competing final bids, and if acceptable competing bids are received, to conduct an auction (in-person and telephonic) at the offices of undersigned counsel.

12.     The Assets include the corporate ownership interests in Paykickstart, intellectual property, work-in-progress, goodwill and other intangible assets of the Debtors.

13.     All other property not specifically itemized in the Purchase Agreement as "Purchased Assets" is excluded from the Assets and will not be subject to sale. Items excluded from the Sale include, but are not limited to, the following: assets that are disposed of in the ordinary course of business; unlisted contracts and contracts not included in those being assigned to the purchaser, any rights or causes of action under any applicable director and officers liability policy or any Chapter 5 Causes of Action set forth under the Bankruptcy Code; assets owned by the Debtors' principal; books and records of the Debtors except for those specifically listed as being sold; and any and all avoidance actions.

### Summary of Relief Requested

14.     As set forth above, Debtors intend to proceed with a formal process in order to obtain the highest and best price for the Assets and thereafter consummate the sale of the Assets to the highest and best bidder. Debtors have determined, in their business judgment, that the auction and sale of the Assets is in the best interests of their respective estates and they believe

that the sale of the Assets in the manner proposed herein is the most effective disposition method available for all claimholders of their estates.

15.    Accordingly, through this Procedures Motion, pursuant to section 105 and 363 of the Bankruptcy Code, Debtor hereby seeks the entry of two orders. First, Debtor requests the entry of an Order (the "Bid Procedures Order"), which:

a.    authorizes and approves (i) the proposed procedures for the submission and consideration of competing bids for the Assets (the "Bidding Procedures); and (ii) the form and manner of notice of these matters, including the notice and manner of the Sale Hearing to be served on parties in interest;

b.    authorizes and approves (i) the Debtor's proposed procedures for (A) the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder and (B) curing defaults under those executory contracts and unexpired leases; and (ii) notice of assumption and assignment of the executory contracts and unexpired leases and the proposed cure amounts relating thereto (the "Assignment Notice"); and

c.    schedules the Auction and a hearing (the "Sale Hearing") on or about August 21, 2024 (or as soon as the Court is available) to consider (i) approval of the sale of the Assets (the "Sale") to the Successful Bidder (as such term is defined in the Bidding Procedures), if any.

16.    Second, upon conclusion of the Sale Hearing, Debtors request the entry of an Order: (a) authorizing the Sale of the Assets free and clear of all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change of control provisions, all rights to object or consent to the effectiveness of the transfer of the Assets to the Successful Bidder, to be excused from accepting performance by the Successful Bidder or performing for the Successful Bidder under any assumed agreement and all rights at law or in equity; (b) a finding that the Successful Bidder is a "good faith" purchaser within the meaning of

Section 363(m) of the Bankruptcy Code; and (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases intended to be acquired by the Successful Bidder (if any).

**The Proposed Auction, Notice, Bidding and Other Procedures**

**A**.      **Notice and Other procedures**

17.      Debtor requests approval of the following notice and other procedures:

(a) <u>Date, Time and Place of the Bid Procedures Hearing</u>. Debtor proposes that the Bid Procedure Hearing be held in the United States Bankruptcy Court for the Middle District of Florida (Orlando Division) on July 11, 2024 at 1:00 p.m. or such other date and time that the Court may direct.

(b) <u>Date, Time and Place of the Sale Hearing</u>. Debtor proposes that the Sale Hearing be held in the United States Bankruptcy Court for the Middle District of Orlando (Orlando Division) on August 21, 2024 at 10:00 a.m. or such other date and time that the Court may direct. The Sale Hearing may be adjourned from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

(c) <u>Auction Notice</u>. At least twenty-one (21) days prior to the Auction (auction to be held on August 14, 2024), notice shall be served on (i) the Stalking Horse and its counsel, (ii) any party who, both prior to and after the commencement of this proceeding, expressed in writing to the Debtors an interest in acquiring the Assets or any party who the Debtors believe may otherwise have an interest in acquiring the Assets, (iii) the U.S. Trustee and all parties who have filed a notice of appearance and request for service of documents filed in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (collectively referred to herein as the

"Auction Notice Parties"). A true and correct copy of the Auction Notice is attached hereto as **Exhibit "B"**.

(d) <u>Information Provided to Interested Parties</u>. The Auction Notice will include (i) a description of the Assets to be sold, (ii) the date, time and location of the Auction, and (iii) a deadline for submitting bids on the Assets. Debtors will also attach a copy of the Purchase Agreement to the Auction Notice and shall include in the Auction Notice (i) the identity of the Stalking Horse, (ii) the price agreed to by the Stalking Horse and (iii) the amount of the deposit provided by the Stalking Horse. Finally, Debtors will attach a copy of the Bidding Procedures to the Auction Notice.

**B.    The Proposed Bidding Procedures**

18.    Debtors crafted the Bidding Procedures to permit an expedited sale necessitated by the circumstances faced by the Debtors, while simultaneously fostering an orderly and fair sale process that will confirm that the Successful Bidder is the best and highest bidder for the Assets and promptly identify any other higher and better alternatives.

19.    The Bidding Procedures are set forth in detail in **Exhibit "A"** and are not restated herein but will be affixed to the order granting this Motion (the "Bid Procedures Order"). The Bidding Procedures describe, among other things, the requirements for prospective purchasers to participate in the auction process, the availability and conduct of due diligence by prospective bidders, the deadline and requirements for submitting a competing bid, the method and criteria for bids to become "qualified," the manner in which bids will be negotiated, clarified, and improved and the criteria for selecting the Successful Bidder. The Debtors will consider all proposals that are deemed qualified in accordance with the Bidding Procedures. The Bidding

Procedures establish (a) the initial bid consideration and (b) any terms and conditions the Successful Bidder must satisfy to acquire the Assets.

**C**.      **Certain Related Relief and Provisions**.

20.      In conjunction with the procedures and Sale as contemplated herein, Debtors request approval of the following:

a.      <u>Modifications of Bidding Procedures or Conducting an Auction</u>: The Debtors will make all final decisions regarding the Auction and may independently at their sole discretion extend an Auction deadline and/or adjourn, continue or suspend the Auction and/or the applicable Sale Hearing for any reason by filing a notice with the Bankruptcy Court and serving such notice on all interested parties. At or prior to the Auction, the Debtors may adopt other rules for the Auction that, in their reasonable judgment, will better promote the goals of the Auction.

b.      <u>Closing with Alternative Back-Up Bidders</u>: If, for any reason, the Successful Bidder fails to close the Sale contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, Debtors shall be authorized to close the Sale with the Bidder that submitted the Next Highest Bid (the "Next Highest Bidder") in accordance with the foregoing procedures. Thereafter, should the Next Highest Bidder fail to close on the Sale as set forth above, then, without notice to any other party or further Bankruptcy Court order, the Debtors shall be authorized to close the sale with the Bidder that submitted the Second Next Highest Bid (the "Second Next Highest Bidder").

c.      <u>Marketing.</u>  Upon entry of an order approving the Bid Procedures, the Debtors shall engage in marketing for the sale of the Assets.  Notably, the Debtors shall contact all persons or entities that have expressed an interest in the Assets both prior to and after the Petition Date.

**D**.      **Proposed Stalking Horse Protections**

21.      Pursuant to the Purchase Agreement, the Stalking Horse will require a Break-Up Fee equivalent to the sum of 2.5% of the capital and funds necessary to consummate the acquisition of the Assets as contemplated in the Purchase Agreement.

**E.      Proposed Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases**.

22.      The following procedures, which may be modified as necessary by further Order of the Court (the "Contract Procedures"), shall govern the assumption and assignment of the certain executory contract and unexpired leases (the "Designated Agreements") in connection with the Sale of the Real Property to the Successful Bidder:

a.      Not less than 13 days prior to the Sale Hearing, the Debtors shall file with this Court and shall serve an Assignment Notice by overnight delivery service upon each non-debtor counterparty to an executory contract or unexpired leases with the Debtors (each a "Non-Debtor Counterparty") that the Debtors intend to assume and assign to the Successful Bidder (the "Designated Agreements"). The Debtors shall attach to the Assignment Notice a list of identifying Non-Debtor Counterparties to the Designated Agreements and the corresponding Cure Costs under the Designated Agreements as of the Closing Date and any additional terms and conditions of assumption or assignment.

b.      Objections, if any, to the proposed Cure Costs, or to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections relating to adequate protection of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Notice Parties so as to be received no later

than ten days after service of an Assignment Notice (the "Designation and Cure Objection Deadline"). Where a Non-Debtor Counterparty to a Designated Agreement files an objection meeting the requirements of this subsection, objection to the assumption by the Debtors and assignment to the Purchaser of such Designated Agreement (the "Disputed Designation") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors, Successful Bidder and Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. If the Debtors, Non-Debtor Counterparty and Successful Bidder determine that the objection cannot be resolved without judicial intervention, then the determination will be determined by the Court at the Sale Hearing or such earlier date as may be affixed by the Court. If the Court determines at this hearing that the Designated Agreement will not be assumed and assigned, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement, provided, however, that after such determination is made by the Court, the Debtors may redesignate such Designated Agreement and propose a new Cure Cost in accordance with these Contract Procedures, including providing the applicable Non-Debtor Counterparty with the Assignment Notice setting forth the redesignation and proposed Cure Cost of the Designated Agreement.

   c.  Any Non-Debtor Counterparty to a Designated Agreement who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Designated Agreement by the Designation and Cure Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreements, and such party shall be forever barred from objecting to the Cure Costs and from

asserting any additional cure or other amounts against the Debtors, their estates, or the Successful Bidder.

      d.     If the Non-Debtor Counterparty to a Designated Agreement fails to timely object to the assumption and assignment of a Designated Agreement or the proposed Cure Costs relating thereto by the Designation and Cure Objection Deadline, or upon the resolution of any timely objection by agreement, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the Successful Bidder and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects.

      e.     The Debtors' decision to assume and assign the Designated Agreements is subject to Court approval and consummation of a Sale. The Debtors shall be deemed to have assumed and assigned each of the Designated Agreements as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Agreements shall neither be assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.

## **Basis for Relief**

     23.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor-in-possession is given these rights by § 1107(a) of the Bankruptcy Code. 11 U.S.C. § 1107(a). Moreover, § 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

     24.     This Court has the statutory authority to authorize the sale free and clear of the liens. Pursuant to 11 U.S.C § 363(f) and § 1107(a), a trustee may sell all or any part of property

of the estate, free and clear of any and all liens, claims, liabilities, encumbrances or other interests if:

a. Applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b. Each entity holding a lien, claim or interest consents;

c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d. Such interest is in bona fide dispute, or

e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. See 11 U.S.C. § 363(f).

25.     In the present case, Debtors submit that the Court may authorize the sale of the Assets because the price at which the Assets are to sold is greater than the aggregate value of all liens associated with such assets, and, therefore, section 363(f)(3) is satisfied. Section 363(f)(2) is also met because Boopos has informally consented to this process based on communications with undersigned counsel.

26.     Although § 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, sale of assets of a debtor should be authorized when there is an articulated business judgment for doing so. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("We adopt the Second Circuit's reasoning in *In re Lionel Corporation*, and conclude that a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"). Here, prior to the Petition Date Debtors engaged in negotiations regarding the sale of their respective assets. Their pre-petition sale negotiations

were complicated by creditor collection efforts which necessitated the filing of this case. Debtors, in their business judgment, have determined that a sale pursuant to the terms and conditions articulated herein will maximize recoveries to creditors and take advantage of an open sale opportunity before the Stalking Horse focuses its attention to other business purchase opportunities with its funding.

**A**.    **The Bidding Procedures Should be Approved**

27.    Sound business reasons support approval of the Bidding Procedures. First the Auction will enable the Debtors to receive the highest price for the Assets. Second, the Auction format encourages competitive bidding which will ensure the sale price is arrived at in good faith and with the interests of creditors in mind. Third, the Auction will enable the Assets to be sold in the most efficient and expeditious fashion.

28.    Further, approval of bidding procedures will allow the Debtors to act quickly on market interest in the Assets while also providing interested parties sufficient notice of the proposed sale to submit competing bids, object to the sale, or otherwise be heard as appropriate, as required by Bankruptcy Rules 6004 and 2002.

29.    Moreover, the Bidding Procedures and the Auction process allow the Stalking Horse Purchase Agreement to be tested in accordance with the requirements of the Bankruptcy Code and the Bankruptcy Rules. Consequently, the fairness and reasonableness of the consideration to be paid by the Stalking Horse ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process – the best means currently available for establishing whether a fair and reasonable price is being paid for the Assets.

31.    Finally, the Proposed Bidding Procedures, which are standard for the sale of assets in chapter 11 cases, will ensure that the Debtors' estates receive the greatest benefit

available from the sale of the Assets. The Bidding Procedures are designed to attract the maximum number of bidders while allowing the Debtors the flexibility to select the bid that optimizes the value to the estates from the sale. The Bidding Procedures are fair and open and do not unfairly favor the Stalking Horse or any other potential purchaser of the Assets.

32.     In sum, the proposed Bid Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Assets by helping ensure a competitive and fair bidding process. They also allow the Debtors to undertake the Auction process in as expeditious a manner as possible, which is essential to maintaining and maximizing the value of the bankrupt estates. Debtors believe that the Bid Procedures will encourage bidding for the Assets and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

**B.      The Proposed Manner of Providing Notice for the Auction and Sale Hearing is Reasonable and Should be Approved**.

33.     Bankruptcy Rule 6004 prescribes the notice that must be given of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code. Pursuant to Bankruptcy Rule 6004(a), notice of a proposed use, sale or lease of property not in the ordinary course of business must satisfy the requirements of Bankruptcy Rule 2002(a)(2), (c)(1), and (k) (as well as section 363(b)(2) of the Bankruptcy Code, which is not applicable here). Bankruptcy Rule 2002(a) requires that "the clerk, or some other person as the court may direct," give "the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: . . . (2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business . . ."

Subsection (k) of Bankruptcy Rule 2002 requires that the same twenty-one day notice be given to the U.S. Trustee.

34.     As described above, the Auction Notice Parties include all of the parties required to be served under the Bankruptcy Rules. In addition, the Debtors propose providing notice to all parties who have filed a notice of appearance and request for service. The Auction Notice Parties will receive twenty-one (21) days' notice of the Auction of the Assets, the form of the Purchase Agreement and the terms of the Stalking Horse Bid. Fed. R. Bankr. P. 2002(c)(1).

35.     Bankruptcy Rule 6004(c) requires that a motion pursuant to section 363(b) or the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interest in the property to be sold." Fed. R. Bankr. P. 6004(c). As noted above, the Auction Notice Parties include holders of liens or other interests in the Assets to be sold. As such, any interest holder in the Assets will be served with copies of the Auction Notice applicable to the Assets in which they hold an interest, the Bidding Procedures, and the Stalking Horse Purchase Agreement, at least twenty-one (21) days prior to the Auction.

**C.     The Court Should Waive or Reduce the Stay Periods Required by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.**

36.     Pursuant to Rule 6004(h) of the Bankruptcy Rules, unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for a period of fourteen (14) days after entry of the order authorizing a sale. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.

<u>**Notice**</u>

37.     Notice of this Procedures Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee and (ii) the Debtors' pre-petition and post-petition lenders. The Procedures Motion will be served on (a) creditors holding the twenty (20) largest unsecured claims against the Debtors as identified in Debtors' business records or their legal counsel (b) all known holders of liens against the Debtors' assets; and (c) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, Debtors respectfully requests entry of an order authorizing the relief requested herein and such other and further relief this Court deems appropriate.

**RESPECTFULLY SUBMITTED** this 3rd day of July, 2024.

/s/ Daniel A. Velasquez
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**Latham, Luna, Eden & Beaudine, LLP**
201 S. Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile:  407-481-5801
*Attorneys for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:24-bk-03076-LVV**<br>**CHAPTER 11** |
| **PAYKICKSTART, LLC** | |
| | *Subchapter V Election* |
| **Debtor.** | |
| _____/ | |
| | |
| **In re:** | **CASE NO.: 6:24-bk-03075-LVV**<br>**CHAPTER 11** |
| **ABIDE BRANDS, INC.** | |
| | *Subchapter V Election* |
| **Debtor.** | *Joint Administration Pending* |
| _____/ | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the **DEBTORS' MOTION FOR (I) AN ORDER APPROVING BIDDING AND NOTICE PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS; AND (II) AN ORDER (A) AUTHORIZING THE SALE OF ASSETS; AND (B) SCHEDULING AUCTION AND FINAL APPROVAL OF SALE; AND (C) GRANTING CERTAIN RELATED RELIEF**, together with all exhibits, has been furnished either electronically and/or by Latham Luna Eden & Beaudine, LLP by U.S. First Class Mail, postage prepaid to: **Abide Brands, Inc.,** 508 Lake Cove Pointe Circle, Winter Garden, FL 34787; **PayKickstart, LLC,** 508 Lake Cove Pointe Circle, Winter Garden, FL 34787; **Carly S. Everhardt**, **Esq. and Brian Peterson, Esq.**, K&L Gates LLP, Southeast Financial Center, Ste. 3900, 200 S. Biscayne Blvd, Miami, Florida 33131, Counsel for **Boopos Warehouse, LLC** (via FedEx overnight); Paykickstart, LLC (FL entity – Buyer's Counsel), **Shane G. Ramsey**, **Esq.**, Nelson Mullins Riley & Scarborough, LLP, 1222 Demonbreun St., Suite 1700, Nashville, Tennessee 37203, (Via FedEx overnight); all parties entitled to receive electronic noticing via CM/ECF; all creditors as shown on the attached Matrix; **Subchapter V Trustee, Aaron R. Cohen**, P.O. Box 4218, Jacksonville, Florida 32201, **Subchapter V Trustee, L. Todd Budgen,** P.O. Box 520546, Longwood, FL 32752; and the **Office of the U.S. Trustee,** 400 W. Washington Street, Suite 1100, Orlando, Florida 32801 this 3rd day of July 2024.

/s/ Daniel A. Velasquez
_____
Daniel A. Velasquez, Esq.

## EXHIBIT "A"

## BIDDING PROCEDURES FOR THE ASSETS

### BID PROCEDURES

Set forth below are the bidding procedures (the "Bid Procedures") to be employed with respect to the selection of the highest and best bids for the sale of the assets of ABIDE BRANDS, INC. and PAYKICKSTART, LLC. as more particular described in the Schedules attached to the Purchase Agreement. As set forth in more detail below, the Debtors will conduct an auction (the "Auction") for the sale (the "Sale") of the Assets if one or more Qualified Bids (as defined below) are timely submitted, which Sale is subject to the Order Granting Debtors' Motion for Order Approving Bidding Procedures, Bidder Protections and Notice Procedures for the Sale of Substantially All of the Debtors' Assets ("Bid Procedures Order")(Doc. No. _____).

### OBTAINING DUE DILIGENCE ACCESS

Upon request, Debtors shall afford each Bidder reasonable due diligence information equivalent to that supplied to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined below).

Debtors shall give each potential bidder reasonable access to all written due diligence information provided to another potential bidder and shall provide substantially the same access to information to each bidder. Debtors reserve the right to require that potential bidders sign a form of nondisclosure agreement approved by the Debtors as a condition to receiving due diligence information. Debtors shall coordinate all reasonable requests for additional information and due diligence access from potential bidders and other professionals. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

### QUALIFIED BID DEADLINE

The deadline for submitting bids shall be August 7, 2024 at 5:00 p.m.  (Eastern Time) (the "Bid Deadline").

Prior to the Bid Deadline, a Bidder that desires to make a bid shall deliver written copies of its bid to (i) Abide Brands, Inc. and Paykickstart, LLC., c/o Daniel A. Velasquez, Esq., Latham, Luna, Eden & Beaudine, LLP, 201 S. Orange Avenue, Suite 1400, Orlando, Florida 32801, dvelasquez@lathamluna.com; and (ii) counsel for Boopos Warehouse, LLC, c/o Brian T. Peterson,  925 4th Avenue, Suite 2900, Seattle, Washington, 98104, brian.peterson@klgates.com; and (iii) counsel for the Stalking Horse, c/o Shane Ramsey, Esq., 1222 Demonbreun Street, Suite 1700, Nashville, TN 37202, shane.ramsey@nelsonmullins.com.

### QUALIFIED BID REQUIREMENTS

A bid must be a written irrevocable offer (i) stating that the bidder offers as a starting bid of at least $4,500,000.00. (the "Initial Bid") to consummate a Sale; (ii) confirming

that the offer shall remain open and irrevocable until the closing; of a Sale to the Successful Bidder or the Next highest Bidder or the Second Next Highest Bidder (as defined below); (iii) enclosing a copy of the proposed bid with any material transaction terms; and (iv) enclosing a certified or bank check, or wire transfer in the amount of $250,000.00 (the "Minimum Deposit"), which will be deposited with counsel for the Debtors ("Escrow Agent"). No liens of any creditors of the Debtors shall attach or be deemed to attach to the Minimum Deposit until and unless a Sale to the bidder making the Minimum Deposit occurs or the bidder forfeits its deposit in accordance with the procedures set forth herein.  All bids will be considered, but the Debtors reserve their right to reject any or all bids.

To be a Qualified Bid, any bid for the Assets must:

(a)     be a written irrevocable offer from a bidder (i) stating that the bidder offers to consummate a Sale; (ii) confirming that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Next Highest Bidder (as defined below); (iii) enclosing a copy of the proposed bid; and (iv) enclosing a certified or bank check, wire transfer, or letter of credit reasonably acceptable to the Debtors equal to the Minimum Deposit;

(b)     provide for the purchase of all of the Assets on equal or higher and/or better terms, and such purchase may not have any conditions to close not present in the Stalking Horse Purchase Agreement provided by the Debtors unless waived by the Debtors;

(c)     not be conditioned on due diligence or financing;

(d)     not request or entitle the subsequent bidder to any break-up fee or expense reimbursement;

(e)     disclose the identity of each person and/or entity bidding for the Assets or participating in connection with a bid, and the terms of any such participation;

(f)     contain written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale;

(g)     demonstrate that the Bidder has the financial wherewithal to close the transaction;

(g)     offer a cash amount set by the Debtors or other consideration acceptable to the Debtors;

(h)     be accompanied by an acknowledgment that the Bidder has had an opportunity to conduct due diligence, does not require further due diligence and has relied solely upon its own independent review in making its bid; and

(i)     be accompanied by a signed contract substantially in the form and substance of the Stalking Horse Purchase Agreement and marked to show any changes made thereto.

A bid received from a Bidder that meets the requirements set forth above will be considered a "Qualified Bid" and the highest and best such bid, the "Highest Qualified Bid." All Qualified Bids shall be available for review by any party in interest, subject to the terms of confidentiality set forth in the Order of the Bankruptcy Court approving the Bid Procedures.

**AUCTION**

If at least one Qualified Bid by a bidder other than the Stalking Horse Bidder is received by the Bid Deadline, the Auction with respect to the Assets shall take place at the date and time designated by the Debtors (but no later than August 7, 2024 at 10:00 a.m. (Eastern Time) at the law offices of Debtors' counsel. The Debtors may extend the Auction deadline and/or adjourn, continue or suspend the Auction and/or the Sale Hearing, only after approval by the Bankruptcy Court and serving such notice on all Auction Notice Parties (as such term is defined in the Procedures Motion). The Debtors will provide appropriate notice to each of the bidders and other invitees of the, date, time, and place for the Auction.

If no Qualified Bid other than the Stalking Horse bid is received by the Bid Deadline, then the Auction will not be held, and, pursuant to the Stalking Horse Purchase Agreement, but subject to the entry of the Sale Order, the Stalking Horse Bidder shall purchase, acquire and accept from the Debtors, and the Debtors shall sell, transfer, assign, convey and deliver to the Stalking Horse Bidder (or its designated affiliate or affiliates) all of the Debtors' right, title and interest in, to and under the Assets, free and clear of all liens (except for the permitted exceptions as defined in the Stalking Horse Purchase Agreement) to the extent permissible under section 363(f) of the Bankruptcy Code, and free and clear of any claims or interests the Debtors may have had, except for the obligations, rights, and covenants expressly provided in the Bid Procedures Order.

A party may participate at the Auction only if it is a bidder who has submitted a bid and has been deemed a "Qualified Bidder." The Debtors will evaluate all Qualified Bids received and may select the Qualified Bid that reflects the highest and best offer, as determined by the Debtors as the "Starting Auction Bid" for the Assets.

The bidding at the Auction shall start at the Starting Auction Bid as disclosed by the Debtors to all bidders prior to commencement of the Auction. The initial overbid amount over the Initial Bid shall be no less than 1.00% of the initial bid. The bidding will continue in incremental amounts of not less than $45,000 until there is a Successful Bid (as defined below) and a Next Highest Bid and a Second Next Highest Bid (as defined below). At the Auction, Bidders will be permitted to increase their bids. All bids subsequent to the Starting Auction Bid, whether oral or written, shall be deemed to constitute valid modifications or amendments to the signed contract previously submitted by such bidder. Any party holding a valid lien against the Assets shall be entitled to credit bid at the Auction pursuant to section 363(k) of the Bankruptcy Code, provided, however, that to the extent applicable, such credit must be accompanied by a cash payment equal to the amount necessary to pay liens senior to the liens of the secured lender that is credit bidding. Any credit bid submitted at the Auction will be on substantially the same terms as contained in the Stalking Horse Purchase Agreement.

Prior to concluding the Auction, the Debtors shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the sale process, and the best interests of the Debtors' estates and creditors and (ii) determine, which bid is the highest and best bid (the "Successful Bid") and the two next highest and best offers after the Successful Bid (the "Next Highest Bid" and the "Second Next Highest Bid").

At or prior to the Auction, the Debtors may adopt other rules for the Auction that, in their reasonable judgment, will better promote the goals of the Auction, including but not limited to adjustments to incremental bidding requirements. All such rules shall be fully disclosed to all bidders and will provide that the procedures must be fair and open. Nothing herein shall prohibit the Debtors from meeting privately with any bidders to negotiate the terms of the bids.

Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered. Neither the Debtors nor any other person shall have any obligation to seek such an order from the Bankruptcy Court.

Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale; Each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative; and, the Auction shall be taken down by a court reporter.

## ACCEPTANCE OF THE SUCCESSFUL BID

Following the Auction or a determination that the Stalking Horse or any other Bidder is the Successful Bidder, but not later than **August 14, 2024**, the Sale Hearing will be held. If a timely objection to the Auction Notice is received, the Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which the Debtors will seek certain findings from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted in a fair and reasonable manner, (ii) the Successful Bidder was selected in accordance with the Bid Procedures, and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest and best value for the Assets and is in the best interests of the Debtors and their estates.

The Debtors shall have accepted a Qualified Bid only when the Bankruptcy Court has approved the Successful Bid and entered the Sale Order. Upon the closing of the Sale, (i) the Debtors shall promptly receive the Minimum Deposit held in escrow in connection with that Successful Bid and (ii) the Successful Bidder shall pay directly to the Debtors the balance of the Successful Bid. The Successful Bidder may at its option make payment for the vehicles directly to the lender holding floor plan financing on the Vehicles, with the Debtors receiving credit and a release therefor.

In the event that, for any reason, the Successful Bidder fails to close the Sale contemplated by its Successful Bid, then, without notice to any other party or further Bankruptcy Court order, the Debtors shall be authorized to close the Sale with the Bidder that submitted the Next Highest Bid (the "Next Highest Bidder") in accordance with the foregoing procedures. In

the event that, for any reason, the Next Highest Bidder fails to close the Sale contemplated, then, without notice to any party or further Bankruptcy Court order, the Debtors shall be authorized to close the Sale with the Bidder that submitted the Second Next Highest Bid (the "Second Next Highest Bidder") in accordance with the foregoing procedures.

## RETURN OF MINIMUM DEPOSIT

The Minimum Deposits of all Bidders required to submit deposits under these Bid Procedures, except for the Successful Bidder and the two Next Highest Bidders, shall be returned upon or within three (3) business days after the Auction. The Minimum Deposit of the Successful Bidder and the two Next Highest Bidders shall be held until the closing of the Sale and the deposit of the Successful Bidder, or the Next Highest Bidder if the Assets are sold to it, will be applied to the amount of the Successful Bid.

Notwithstanding the above, if the Successful Bidder (or the Next Highest Bidders, if applicable) fails to close the Sale, such party's Minimum Deposit shall be forfeited to the Debtors. Except as otherwise provided in the Sale Agreement, the Debtors will not be required to maintain any Minimum Deposit in an interest bearing account, but any interest earned on any Minimum Deposit will be remitted to the appropriate Bidder if the Minimum Deposit is returned to the Bidder pursuant to the above or applied to the amount of the Successful Bid. Minimum Deposits may only be used in accordance with the terms of these Bidding Procedures. Neither the Debtors nor the Successful Bidder shall have any liability with respect to any Minimum Deposit.

In the event that a dispute arises in relation to the Minimum Deposit, the Escrow Agent is authorized to deposit the funds into the Bankruptcy Court for a determination as to the proper disposition of said funds. In the event that the funds are deposited into the Bankruptcy Court, the Escrow Agent shall be entitled to file a claim in the proceeding for its costs and counsel fees, if any. Payment of the funds so held in escrow by the Escrow Agent, in accordance with the terms, conditions and provisions of the Sale Agreement, shall fully and completely discharge and exonerate the Escrow Agent from any and all future liability or obligations of any nature or character at law or equity to the parties hereto or under this Agreement.

## RESERVATION OF RIGHTS

Except as otherwise provided herein, the Debtors reserve the right to (i) determine which Bids are Qualified Bids; (ii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iii) reject any bid that is (a) inadequate or insufficient or (b) not in conformity with the requirements of the Bid Procedures Order or the requirements of the Bankruptcy Code.

## JURISDICTION

The Bankruptcy Court shall have jurisdiction over all matters, including but not limited to any legal action, suit, or proceeding arising out of or relating to the Purchase Agreement stemming from this transaction, including any related agreements, or the transactions

contemplated hereby or thereby, and the interpretation, implementation, and enforcement of said Agreement; and the parties hereto irrevocably submit and consent to such jurisdiction and to the entry of final orders or judgment by the Bankruptcy Judge in any dispute with respect to such matters. The parties further agree to irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of the Sale Agreement in the Bankruptcy Court or the United States District Court for the Middle District of Florida, Orlando Division, and irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.  In the event that a court should rule that subject matter jurisdiction is not available in the United States District Court for the Middle District of Florida, Orlando Division, the parties hereby agree to submit any and all disputes arising out of the Sale Agreement to the jurisdiction and venue of any other competent court sitting in Orange County, Florida.

**Exhibit "B"**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:24-bk-03075-LVV** |
| | **CHAPTER 11** |
| **ABIDE BRANDS, INC.** | |
| | *Subchapter V Election* |
| **Debtor.** | |
| _____/ | |
| **In re:** | **CASE NO.: 6:24-bk-03076-LVV** |
| | **CHAPTER 11** |
| **PAYKICKSTART, LLC** | |
| | *Subchapter V Election* |
| **Debtor.** | |
| _____/ | |

**NOTICE OF AUCTION AND SALE HEARING**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On July 3, 2024, Abide Brands, Inc. and Paykickstart, LLC (collectively the "Debtors"), filed a Motion [Doc. No.____] (the "Motion"), for entry of an order (the "Bid Procedures Order"), (a) approving Bid Procedures for the sale of substantially all of the Debtor's assets (the "Assets"); (b) approving the form and manner of notice of the auction of the Assets and the Sale Hearing; and (c) scheduling a sale hearing (the "Sale Hearing") to consider the sale of the Assets and setting objection and bidding deadlines with respect to the sale of the Assets. The Motion additionally requests entry of an order (the "Sale Order") approving (i) the sale of the Assets free and clear of liens, claims, encumbrances and interests, except as set forth in the Bid Procedures Order; and (ii) certain related relief.

2.      On July 11, 2024, the United States Bankruptcy Court for the Middle District of Florida entered the Bid Procedures Order [Doc. No. ___]. Pursuant to the Bid Procedures Order, the auction (which may be attended telephonically or in-person) for the Assets shall take place on August 14, 2024 at 10:00 a.m. (prevailing Eastern Time) at the offices of Latham Luna Eden & Beaudine, LLP, 201 S. Orange Avenue, Suite 1400, Orlando, Florida 32801. Only parties that have submitted a Qualified Bid in accordance with the Bid Procedures, by no later than August 7, 2024 at 5:00 p.m. (Eastern Time) (the "Bid Deadline") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Assets must submit its bid prior to the Bid Deadline and in accordance with the Bid Procedures. Parties interested in receiving information regarding the sale of the Assets should contact undersigned counsel.

3.      The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder free and clear of all liens, claims, and encumbrances and interests will be held before the Honorable Lori V. Vaughn, George C. Young Federal Courthouse, Courtroom 6C, 400 W. Washington Street, 6th Floor, Orlando, Florida 32801 on August 21, 2024 at _____ , or at such earlier date as counsel may be heard. The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

4.      Objections, if any, to the relief requested in the Motion in respect of the determination of which Qualified Bid is the Successful Bid or any other aspect of the Auction must: (i) be in writing; (ii) comply with the Bankruptcy Rules and Local Rules, (iii) be filed with the clerk of the Bankruptcy Court for the Middle District of Florida, George C. Young Federal Courthouse, Suite 5100, 400 W. Washington Street, Orlando, Florida 32801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Orlando, FL time) two business days before the Sale Hearing (the "Objection Deadline"), and (iv) served upon (a) counsel for the Debtor and (b) counsel for Boopos; and (iii) Counsel for the Office of the United States Trustee so as to be actually received no later than 4:00 p.m. (prevailing Orlando, FL time) on the same day.

5.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Motion, the Bid Procedures, and/or the Bid Procedures Order may be obtained by request in writing, by telephone, or via email from counsel to the Debtor: Daniel A. Velasquez, Esq., Latham Luna Eden & Beaudine, LLP, 201 S. Orange Avenue, Suite 1400, Orlando, Florida 32801; Tel: 407-481-5800, e-mail: dvelasquez@lathamluna.com. In addition, copies of the aforementioned pleadings may be found on the Pacer website, http://flmb.uscourts.gov.

/s/ Daniel A. Velasquez
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lathamluna.com
**Latham, Luna, Eden & Beaudine, LLP**
201 S. Orange Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile:  407-481-5801

# EXHIBIT "C"

DocuSign Envelope ID: 60891969-4339-40B7-8185-092669B9D2B7

## LETTER OF INTENT

June 26, 2024

<u>Via E-Mail</u>
Abide Brands, Inc. and PayKickstart, LLC
Attention: Jared Schneider
E-Mail: jared@abidebrands.com

Dear Jared:

This non-binding Letter of Intent ("**LOI**") outlines the general framework for an agreement pursuant to which PayKickstart, LLC, a Florida limited liability company ("**Purchaser**"), will purchase substantially all the assets of Abide Brands, Inc., a Delaware corporation ("**Abide**") and PayKickstart LLC, an Indiana limited liability company ("**Operating Company**", and collectively with Abide, each a "**Company**" and collectively the "**Companies**") other than Abide's membership interest in Operating Company.

1.  **Transaction**.

    (a)     The transaction (the "**Proposed Transaction**") would be structured as the acquisition of certain tangible and intangible assets (collectively, the "**Acquired Assets**") of the Companies and their subsidiaries as are necessary to continue the Companies' current business operations (including (i) cash, less cash necessary to satisfy administrative claims required to confirm a plan of liquidation (subject to an agreed upon cap on the aggregate amount of administrative claims), (ii) all customer contracts, and (iii) any accounts receivable in excess of amounts required to cover any remaining unpaid administrative claims of the bankruptcy proceedings), free and clear of all liens, claims and encumbrances, to be identified specifically in the Definitive Transaction Agreement (as defined below).

    (b)     From the date of the execution of this LOI until the Closing or the Termination Date (as each is defined below), whichever occurs first, the Companies and their subsidiaries will continue to maintain all of the assets necessary to operate the Companies' business as a going concern in the normal course of business. The terms and conditions reflected in this LOI will be evidenced by a definitive agreement (the "**Definitive Transaction Agreement**") to be negotiated and agreed to by Purchaser, the Companies, and Jared Schneider ("**Schneider**"), as the sole stockholder of Abide (Schneider, together with the Companies, are collectively referred to as the "**Sellers**"). Upon signing this LOI, Purchaser is prepared to move quickly towards simultaneously signing the Definitive Transaction Agreement and closing the Proposed Transaction within fourteen (14) days after the Bankruptcy Court's confirmation of the Companies' Chapter 11 plan (the "**Closing**"), assuming

DocuSign Envelope ID: 60891269-4339-40B7-8185-092669B9D2B7

the Closing occurs on or before the Termination Date (as defined below). In order to complete the Proposed Transaction, Purchaser and the Sellers will need to work expeditiously in pursuit of the Closing.

(c)     The total consideration paid to the Companies by the Purchaser for the Acquired Assets will be $4,500,000.00 (the "**Purchase Price**"), payable as follows: (i) $2,000,000 payable at the Closing, in cash (the "**Cash Payment**"); (ii) unsecured debt evidenced by a promissory note in the amount of $1,500,000.00 payable over a seven (7) year term at no interest, with five (5) annual payments of $100,000.00 on each of the second (2nd), third (3rd), fourth (4th), fifth (5th), and sixth (6th) anniversaries of the Closing and all unpaid principal being due and payable on the seventh (7th) anniversary of the Closing; and (iii) a twenty percent (20.0%) transaction bonus (the "**Transaction Bonus**") upon the first sale of all or substantially all of the assets of Purchaser or all of the issued and outstanding equity interests of Purchaser, in an amount equal to the amount that the recipients would have received had they collectively owned twenty percent (20%) of the entire issued and outstanding equity interests of Purchaser at the time of such sale (which, for clarity, shall be subject to customary reductions for indebtedness, expenses, and other obligations that will be detailed more particularly in the Definitive Transaction Agreement) with an estimated value of $1,000,000.00.

(d)     The Sellers will agree to certain restrictive covenants, which include standard non-competition and non-solicitation covenants for Schneider for a period of five (5) years after Closing, and customary non-disclosure covenants for Sellers. Schneider will also provide six (6) months of support up to ten (10) hours per week of transition assistance immediately after the Closing in further consideration of the Purchase Price (the "**Transition Commitment**"). Schneider will receive monthly payments of $2,500.00 per month for six (6) months as payment for the Transition Commitment.

(e)     The Definitive Transaction Agreement will provide that: (i) Purchaser will not assume any indebtedness of the Sellers, and that any current indebtedness of the Companies will be repaid at the Closing of the transaction from the Purchase Price or otherwise satisfied pursuant to a sale order issued by the Bankruptcy Court; and (ii) Sellers' obligations under the Definitive Transaction Agreement will be secured by a right of set-off against the Monthly Payments by the Purchaser.

(f)     The Definitive Transaction Agreement will contain representations and warranties concerning the financial condition, assets, liabilities, litigation, environmental, regulatory compliance matters, history and ownership of the Companies' software, and other matters concerning the Companies that are customary in agreements of this type.

2.    **Bankruptcy Matters**. The Companies have filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**").

The private sale of the Acquired Assets will be conducted under the provisions of Section 363 of the Bankruptcy Code and will not be subject to a marketing process except to as to parties who indicated an interest in acquiring the Purchased Assets prior to the Companies' filing of their voluntary petition for relief under the Bankruptcy Code and whom the Sellers reasonably believe could present an offer that is greater in value to the transaction described in this LOI. In any event, the Companies may consider higher and better offers from third parties and, if such an offer or offers are received, may conduct an auction for the sale of the Acquired Assets (the "**Auction**").

In view of these and other factors, and the substantial benefits to the Companies and their creditors provided by the Proposed Transaction, the Sellers have proposed, subject to approval by the Bankruptcy Court, certain bidding protections and inducements that are acceptable to Purchaser. The bidding protections and inducements include: (i) a specific stalking horse Break-up Fee (as defined below); (ii) procedures that call for the qualification of competing bidders at any Auction; (iii) earnest money deposit requirements from competing bidders; (iv) minimum overbid amount and bidding increments of 1% of the capital and funds necessary to close the Proposed Transaction; (v) Purchaser's right to match any overbid amount; and (vi) timing of process limitations.

The Break-up Fee proposed by Sellers and accepted by Purchaser will be paid to Purchaser, in accordance with the proposed order of the Bankruptcy Court, in the event of the consummation of an acquisition of the Acquired Assets by another bidder. The "**Break-up Fee**" shall be calculated and defined as the sum of 2.5% of the capital and funds necessary to consummate the Proposed Transaction as set forth in the Definitive Transaction Agreement (both paid at Closing, and deferred to future payment) (the "**Total Transaction Consideration**"). These terms and conditions of the Break-up Fee will need to be approved by the Bankruptcy Court, and such approval is a condition precedent to Purchaser's further pursuit of the Proposed Transaction.

The Closing of the Proposed Transaction would be subject to, among other things: (i) the negotiation and execution of the Definitive Transaction Agreement and ancillary agreements mutually acceptable to each of the parties thereto, containing such representations and warranties, covenants, conditions and other terms as are customary for a transaction of this type; (ii) the Bankruptcy Court approving the terms and conditions of the sale as outlined herein, including the Purchaser stalking horse bid and the entry of a Final Order approving the transfer of the Acquired Assets in accordance with the terms of the Definitive Transaction Agreement to Purchaser (the "**Sale Order**"), all in a form and manner acceptable to Purchaser; (iii) the receipt of any necessary consents or approvals from third parties and governmental entities; and (iv) the absence of any material adverse

change in the business, assets, condition, results of operations, cash flows, assets, prospects, or properties of the Companies.

3.     **Exclusivity**. As an inducement to Purchaser to engage in additional discussions, negotiations, and investigations, which will involve the engagement of professionals and the incurrence of substantial expense, the Companies and Purchaser hereby agree as follows:

     (a)      Until August 8, 2024 (the "**Termination Date**"), the Sellers will not, and will not allow their respective equityholders or officers, directors, employees, affiliates, agents, counsel or investment advisors, to directly or indirectly do any of the following, unless and except to the extent required by the Bankruptcy Court pursuant to an Auction or as otherwise contemplated in the second (2nd) paragraph of <u>Section 2</u>: (i) engage in, enter into, or solicit any discussions, negotiations, proposals, inquiries, offers, or agreements with any person other than Purchaser and its affiliates and representatives with respect to a sale, disposition, or recapitalization of either Company; or (ii) release any non-public information, other than to Purchaser and its representatives, the purpose or the result of which would be to assist in the preparation of an offer with respect to, the sale, transfer, disposition, or recapitalization of either Company or any of their subsidiaries or any Company's or any of its subsidiaries' equity, assets, or business interests (except transactions in the ordinary course of business). The Sellers shall be responsible for any breach of this paragraph by any of the Companies or their respective owners, officers, directors, employees, affiliates, agents, counsel, or investment advisors.

     (b)      Until the Termination Date, or an earlier date on which the Sellers notify Purchaser, or the Purchaser notifies Sellers, in writing that they no longer intend to consummate the transaction contemplated herein, the Sellers shall provide Purchaser and its representatives with full access to the assets, properties, books, records, employees, accountants, and business of the Companies.

     (c)      The Sellers shall immediately notify Purchaser in writing to the extent the Sellers determine not to consummate the Proposed Transaction on the terms set forth herein.

     (d)      Purchaser will immediately notify the Sellers of any issues which arise that would require a material change to the terms and conditions of the Proposed Transaction, at which time the Sellers, in its sole discretion, may modify the Termination Date as of the date thereof.

4.     **Other Terms**.

DocuSign Envelope ID: 60891969-4339-40B7-8185-092669B9D2B7

(a)     The Sellers will be responsible for paying all of their legal, advisory, and other expenses in connection with this transaction. Except to the extent a Break-Up Fee is payable to Purchaser, Purchaser will pay its own transaction expenses, including any legal or advisory fees it incurs to close the transaction.

(b)     The existence and the terms of this LOI are strictly confidential, and shall not be disclosed by Purchaser or the Sellers to any third party except: (i) to their respective representatives and legal, financial, accounting, tax and other bona fide advisers; (ii) as required by law or to the Bankruptcy Court, or to any third party to which the Bankruptcy Court requires this LOI or any term hereof to be disclosed; (iii) with the prior written consent of the parties hereto.

(c)     Except for the obligations set forth Section 3 ("**Exclusivity**"), Section 4(a), and Section 4(b) (which shall upon execution of this LOI constitute binding agreements of the parties), this LOI is not intended to, and shall not, constitute a binding agreement among the parties hereto. Nothing in this letter shall obligate Purchaser, any Seller, or any other person to enter into a definitive agreement or consummate the Proposed Transactions contemplated herein.

(d)     This LOI: (i) may not be modified, amended, or supplemented except by a written instrument signed by the parties hereto; (ii) shall be deemed to be made in and shall be interpreted, construed, and governed by and in accordance with the laws of the State of Delaware, without regard to the conflicts of law provisions thereof to the extent that such principles would permit or require the application of the laws of another jurisdiction; (iii) contains the entire understanding among the parties hereto and supersedes any prior written or oral agreements between them respecting the subject matter of this LOI; and (iv) may be signed in one or more counterparts, each of which may be an original or facsimile and all of which taken together shall constitute one and the same instrument.

(e)     Purchaser shall provide reasonable evidence of its ability to make the Cash Payment.

[*Remainder of Page Intentionally Blank.*]

We are excited about the opportunity of working with the Companies and their management teams. We look forward to hearing from you.

Sincerely,

**PAYKICKSTART, LLC**, a Florida limited liability company

By: _____
Cole Schrimsher, as its Manager

Accepted and approved as of June 26, 2024.

**ABIDE BRANDS, INC.**, a Delaware corporation

By: _____
Jared Schneider, as its CEO

**PAYKICKSTART LLC**, an Indiana limited liability company

By: _____
Jared Schneider, as its Manager